UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Miracle-Ear, Inc., a Minnesota corporation,<br>           Plaintiff<br><br>v.<br><br>Catherine Richardson, Brian Richardson, and Colorado Hearing Health, Inc., a Colorado corporation,<br>           Defendants | Court File No. _____<br><br>**COMPLAINT** |

For its Complaint against Defendants Catherine Richardson, Brian Richardson, and Colorado Hearing Health, Inc., Plaintiff, Miracle-Ear, Inc., states as follows:

## THE PARTIES

1. Plaintiff Miracle-Ear, Inc. ("Miracle-Ear") is a Minnesota corporation with its principal place of business at 5000 Cheshire Parkway North, Plymouth, Minnesota 55446.

2. Upon information and belief, Defendant Colorado Hearing Health, Inc. ("Colorado Hearing"), is a Colorado corporation with its principal place of business at 1614 Gaylord Street, Denver, Colorado 80206.

3. Upon information and belief, Defendant Catherine Richardson is a resident of Denver, Colorado.

4. Upon information and belief, Defendant Brian Richardson is a resident of Denver, Colorado.

5. Upon information and belief, Defendants Catherine and Brian Richardson (the "Individual Defendants") own 100% of Colorado Hearing.

## JURISDICTION AND VENUE

6. This is an action for breach of contract and unjust enrichment. This Court has diversity jurisdiction under 28 U.S.C. § 1332, because the case involves citizens of different states and the amount of damages is more than $75,000 exclusive of interest and costs.

7. Venue is proper under 29 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the District of Minnesota, and all Defendants are residents of foreign states and this Court has personal jurisdiction over them. In addition, the parties' contracts contain a venue selection provision requiring any proceeding to be brought in the state or federal court in Minnesota, and all Defendants have consented to personal jurisdiction in Minnesota.

## FACTS

8. Miracle-Ear has developed a business system for operating hearing aid stores and/or kiosks under the names "Miracle-Ear Centers" and "Sears Hearing Aid Centers." Miracle-Ear grants franchises to operate Miracle-Ear businesses using this business system along with Miracle-Ear trademarks, service marks, slogans and logos.

9. Colorado Hearing held a franchise to operate a total of 5 Miracle-Ear Centers and Sears Hearing Aid Centers in Westminster, Denver, Lakewood and Colorado Springs, Colorado. By this Complaint, Plaintiff seeks a judgment for products, services

and other obligations incurred but not paid from September 1, 2015 to date, as well as obligations that may still arise.

10. On November 25, 2013, Miracle-Ear and Colorado Hearing entered into a franchise agreement entitling Colorado Hearing to operate multiple Miracle-Ear Centers in Colorado. ("Franchise Agreement").

11. On November 25, 2013, Mr. Richardson and Mrs. Richardson entered into a Personal Guaranty and Assumption of Franchisee's Obligations ("Guaranty"), through which they personally guaranteed Colorado Hearing's performance of the Franchise Agreement. Through the Guaranty, Mr. and Mrs. Richardson agreed "to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement."

12. Defendants consented to jurisdiction and venue in Federal District Court in Minnesota:

> Any cause of action, claim, suit or demand allegedly arising from or related to the terms of this Agreement or the relationship of the parties shall be brought in the Federal District Court for the District of Minnesota or in Hennepin County District Court, Fourth Judicial District, Minneapolis, Minnesota. Miracle-Ear, Franchisee and each person executing the Personal Guaranty and Assumption of Franchisee's Obligations [Guaranty] attached hereto as Exhibit E irrevocably admit to, and consent to, the jurisdiction of said courts.

Franchise Agreement§ 21(E).

13. Under the Franchise Agreement, Colorado Hearing agreed to "timely pay all of its obligations and liabilities due and payable to Miracle-Ear." Franchise Agreement§ 4(L).

14. Colorado Hearing agreed to pay a royalty and an advertising fund fee for each hearing aid sold, and to contribute to a national marketing fund, and Mr. Richardson and Mrs. Richardson all guaranteed these obligations. Franchise Agreement §§ 2(B) and 2(C); Guaranty.

15. Colorado Hearing agreed to pay late fees for overdue payments:

> All fees, amounts due for goods purchased and other amounts which are not paid by Franchisee to Miracle-Ear when and as due shall be subject to a late charge from the due date of that payment until actually paid equal to the highest lawful annual rate of interest for open account business credit, but not more than two percent (2%) per month.

Franchise Agreement § 2(E). And Mr. Richardson and Mrs. Richardson guaranteed these commitments.

16. Under the Agreement, Colorado Hearing agreed to defend, indemnify and hold harmless Miracle-Ear "against any and all claims, loss, liability, damage, cost and expense arising directly or indirectly from Franchisee's negligence, breach of contract or other civil wrong . . ." Franchise Agreement § 15(C).

17. The indemnification provision survives the termination of the Franchise Agreement.

18. The Franchise Agreement provides that Miracle-Ear shall recover its attorneys' fees and costs of collection:

> <u>Attorneys' Fees</u>. In any legal proceeding before a court, an arbitrator or other tribunal, the prevailing party shall be entitled to recover, in addition to any judgment, its reasonable legal fees, witness fees, accounting fees and other expenses reasonably incurred in the prosecution and/or defense of such proceeding and in the collection or enforcement of such judgment.

Franchise Agreement § 20.

19. The Franchise Agreement contains certain post-termination covenants, including a covenant to pay all outstanding amounts due and attorneys' fees for cost of collection:

> Franchisee shall immediately pay all sums owing to Miracle-Ear. In the event of termination for any default of Franchisee, such sums shall include outstanding invoices for inventory and all damages, costs, and expenses (including reasonable attorneys' fees and expenses) incurred by Miracle-Ear as a result of default. Such sums shall also include charges billed after termination for exiting Third Party Retail location.

Franchise Agreement§ 14(B)(4).

20. Defendants breached the Franchise Agreement by failing to pay amounts due for hearing aids, accessories, royalties, advertising, marketing, and finance charges.

21. Colorado Hearing also signed multiple promissory notes in favor of Miracle-Ear, listed below, which were personally guaranteed by the Individual Defendants:

   a. $150,000 in Working Capital Notes that accrue interest at an annual rate of 6%;

   b. $350,000 in Acquisition Notes that accrue interest at an annual rate of 6%;

   c. $45,000 in Payback Relocation Notes that accrue interest at an annual rate of 4%; and

   d. $75,000 in Deferred Notes that accrue interest at an annual rate of 6 % starting on May 5, 2016.

**22.** Defendants breached the terms of the Working Capital, Acquisition and Payback Relocation Notes by failing to timely pay amounts due thereunder.

23. On or about January 18, 2016 the Parties entered into a Forbearance and Financial Assistance Agreement ("Forbearance Agreement"), under which Plaintiff agreed to "forebear from exercising its right to terminate the Franchise Agreement and accelerate the Notes" during the forbearance period, so long as Defendants complied with the terms of the Forbearance Agreement.

24. Pursuant to the Forbearance Agreement, Plaintiff also loaned Defendants $50,000 in additional working capital with interest at an annual rate of 6% ("Forbearance Note"). (Forbearance Agreement ¶ 1C.)

25. Pursuant to the Forbearance Agreement, Defendants agreed that "any controversies arising hereunder or out of the relationship of the parties shall be construed under . . . the laws of the State of Minnesota . . ." and that any such litigation would "be brought in the Federal District Court for the District of Minnesota or in Hennepin County District Court, Fourth Judicial District, Minneapolis, Minnesota." (Forbearance Agreement ¶5.)

26. Defendants consented to jurisdiction of said courts. (Forbearance Agreement ¶5.)

27. Pursuant to the Forbearance Agreement, Plaintiff agreed to continue to sell Colorado Hearing hearing aids and provide other services under the Franchise Agreement so long as Defendants continued to perform their obligations under the Forbearance Agreement.

28. Pursuant to the Forbearance Agreement, Defendants agreed and acknowledged that they were jointly and severally liable to Plaintiff in the amount of

$308,313.50 for hearing aids, accessories, royalties, advertising, marketing, and finance charges under the Franchise Agreement, as well as the following amounts under the Notes:

    a. $149,239.82 owed under the Working Capital Notes;

    b. $333,838.47 under the Acquisition Notes;

    c. $33,854.75 under the Payback Relocation Notes; and

    d. $75,000 under the Deferred Notes.

29. Pursuant to the Forbearance Agreement, Defendants agreed that a default of the Forbearance Agreement was cause to immediately terminate the Forbearance Agreement and the Franchise Agreement.

30. Subsequently Defendants defaulted on the Forbearance Agreement.

31. On or about February 29, 2016 Miracle-Ear terminated the Franchise Agreement and the Forbearance Agreement in compliance with the terms thereof.

32. As of February 25, 2016, Defendants owed Miracle-Ear a total of $986,777.91, of which $634,704.32 was owed under the terms of all the Notes, and $352,073.59 was owed in accounts receivable for hearing aids, accessories, royalties, advertising, marketing, and finance charges.

33. After the Franchise Agreement and Forbearance Agreements were terminated, Miracle-Ear took over operation of the hearing aid clinics formerly operated by Colorado Hearing pursuant to a Limited License Agreement dated March 10, 2016.

34. Defendants voluntarily relinquished possession of the physical assets previously used by Colorado Hearing to operate its hearing aid business, and relinquished possession of the leased premises for the Colorado Hearing clinics.

35. The Limited License Agreement terminated on April 29, 2016. (Limited License Agreement ¶ II.A.)

36. Pursuant to the Limited License Agreement, Defendants agreed to sell Colorado Hearing's assets and assign its leases for the Colorado Hearing centers to Miracle-Ear, for $350,000 on April 29, 2016 if the Colorado Hearing business had not been sold to a new franchisee by that time. (Limited License Agreement § IV.)

37. The Colorado Hearing business had not been sold to a new franchisee and Miracle-Ear performed its asset purchase obligation, offsetting the amounts due and owing from Defendants by $350,000, the amount of the asset purchase price (the "Asset Sale Offset").

38. Pursuant to the Limited License Agreement, Defendants also agreed to address the outstanding amounts owed to Plaintiff (Limited License Agreement § IV), but negotiations broke down during the week prior to the expiration of the Limited License Agreement.

39. As of April 14, 2016 Defendant had accumulated a debt in the amount of $1,022,805.13, consisting of $634,681.75 owed under the Notes and $388,123.38, is owed to Miracle-Ear under the Franchise Agreement for products, services, and other obligations; and after crediting for the Asset Sale Offset, Defendants owed Miracle-Ear $672,805.13 as of April 2016. See Exhibit A.

40. As a result of Defendants' refusal to pay the amounts owing to Miracle-Ear, Miracle-Ear has been forced to bring this action and has and will continue to incur attorneys' fees plus costs and disbursements, in order to collect the amounts owed.

## COUNT I
### (Breach of Franchise Agreement and Notes)

41. All previous paragraphs are realleged and incorporated by reference.

42. Colorado Hearing has breached and is breaching its obligations under the Notes by failing and refusing to repay the Notes; the amounts due thereunder are reflected in the "Notes/Loans" section of the attached Exhibit A.

43. Colorado Hearing has breached, and is breaching, the Franchise Agreement by failing and refusing to pay to Miracle-Ear the amounts attached hereto as Exhibit A.

44. As a result of Colorado Hearing's breach, Miracle-Ear has been damaged in the amount of $672,805.13 as of April 2016 for Notes, hearing aids, accessories, royalties, advertising, marketing, and finance charges, plus attorneys' fees, costs, disbursements and interest, and after crediting for the Asset Sale Offset.

45. Plaintiff's damages continue to grow, as interest accumulates and for reasonable attorneys' fees and costs incurred to collect the amounts due.

## COUNT II
### (Breach of Personal Guaranties)

46. All previous paragraphs are realleged and incorporated by reference.

47. The Individual Defendants signed personal guaranties, guarantying Colorado Hearing's performance under the Franchise Agreement, as well as the Notes.

48. Catherine Richardson and Brian Richardson breached, and are breaching, their Guaranties by failing and refusing to pay to Miracle-Ear the amounts attached hereto as Exhibit A.

49. As a result of the Individual Defendants' breaches, Miracle-Ear has been damaged in the amount of $672,805.13 as of April 2016 for Notes, hearing aids, accessories, royalties, advertising, marketing, and finance charges, plus attorneys' fees, costs, disbursements and interest, and after crediting for the Asset Sale Offset.

50. Plaintiff's damages continue to grow, as interest accumulates and for reasonable attorneys' fees and costs incurred to collect the amounts due.

## COUNT III
### (Breach of Forbearance Agreement)

51. All previous paragraphs are realleged and incorporated by reference.

52. The Defendants have breached and are breaching their obligations under the Forbearance Agreement, including repayment of the working capital loan provided by Plaintiff thereunder, by failing and refusing to repay the amounts due Plaintiff under the Franchise Agreement and Notes.

53. As a result of the Defendants' breaches, Miracle-Ear has been damaged in the amount of $672,805.13 as of April 2016 for Notes, hearing aids, accessories, royalties, advertising, marketing, and finance charges, plus attorneys' fees, costs, disbursements and interest, and after crediting for the Asset Sale Offset.

54. Plaintiff's damages continue to grow, as interest accumulates and for reasonable attorneys' fees and costs incurred to collect the amounts due.

## COUNT IV
### (Account Stated)

55. All previous paragraphs are realleged and incorporated by reference.

56. As of February 25, 2016, Defendants owed Miracle-Ear a total of $986,777.91, of which $634,704.32 was owed under the terms of all the Notes, and $352,073.59 was owed on account for hearing aids, accessories, royalties, advertising, marketing, and finance charges.

57. Plaintiff provided Defendants with notice of the amounts due on account on or about February 29, 2016.

58. Defendants have not disputed the amounts stated on the account.

59. Damages have continued and continue to accrue with the passage of time.

**WHEREFORE**, Miracle-Ear, Inc. respectfully requests an order granting the following relief:

1. Awarding Miracle-Ear, Inc. judgment against Defendants in an amount to be proven at trial, consisting of $672,805.13 (as of April 2016) plus additional accrued interest;

2. Awarding Miracle-Ear, Inc. judgment against Defendants for costs, disbursements, reasonable attorneys' fees, and pre-award, pre-judgment and post judgment interest;

3. Such further relief as the Court may deem just and equitable.

Dated:  July 28, 2016          */s/ Emily E. Duke*
Emily E. Duke, (#0249178)
**DUKE LAW OFFICE, PLLC**
P.O. Box 16178
St. Paul, MN  55116
Telephone:  651.387.1227
eduke@DukeLawOffice.com

***Attorneys for Plaintiff***